UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRYAN P.,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil Action No. 1:22-cv-05496

OPINION

**APPEARANCES**:

Alan H. Polonsky
POLONSKY & POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106

   *On behalf of Plaintiff*.

Melissa K. Curry
Special Assistant United States Attorney
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

   *On behalf of Defendant*.

**O'HEARN, District Judge.**

   This matter comes before the Court on Plaintiff Bryan P.'s[1] appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 78.1.

---

   [1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

For the reasons that follow, the Court **VACATES** the Administrative Law Judge's ("ALJ") decision and **REMANDS** this case for further administrative proceedings.

I.     <u>**BACKGROUND**</u>

The Court recites herein only those facts necessary for its determination on this Appeal.

**A. Administrative History**

On May 23, 2012, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that she had been disabled since February 29, 2012. (AR 75). The applications were denied initially on October 25, 2012, and upon reconsideration on June 4, 2013. (AR 173–84, 188–93). Thereafter, Plaintiff filed a written request for a hearing before an ALJ on June 21, 2013. (AR 195–99). The ALJ held a hearing on October 2, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 39–74). In a decision dated February 26, 2015, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 13–38). That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on May 2, 2016. (AR 1–6). Plaintiff timely filed an appeal on May 31, 2016, pursuant to 42 U.S.C. § 405(g). (AR 755). On June 6, 2017, this Court remanded after finding that the ALJ's decision did not address or adequately explain how it determined that Plaintiff is able to ambulate effectively. (AR 717, 729–51).

On remand, the ALJ held a hearing on May 3, 2019, at which Plaintiff, who was represented by counsel, testified, as did a VE. (AR 611–59). On December 4, 2019, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 798–829). The Appeals Council remanded to a new ALJ on May 25, 2021, with orders to evaluate Plaintiff's residual functional capacity ("RFC") and her post-bariatric surgery

symptoms. (AR 830–38). On January 5, 2022, the new ALJ held a hearing at which Plaintiff, who was represented by counsel, testified, as did a VE. (AR 660–84). In an unfavorable decision dated July 15, 2022, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 551–610). Because the Appeals Council did not review the decision within sixty days, the ALJ's decision became the final decision of the Commissioner and this appeal followed. *See* (Pla. Br., ECF 6 at 6); (AR 552).

### B. Plaintiff's Background and Testimony

At the alleged onset of disability, Plaintiff was thirty-eight years old. (AR 75). She currently lives with her husband and her two children. (AR 669). Plaintiff previously worked as a social worker in Puerto Rico but could not continue working due to body and joint aches, among other issues. (AR 563). As a result of her physical conditions, Plaintiff alleged disability on February 29, 2012. (AR 559).

Plaintiff's initial disability claim in June 2012 cited the following illnesses, injuries, or conditions: hypertension, sleep apnea, asthma, morbid obesity, and depression. (AR 563). Then, in 2016, Plaintiff alleged an inability to work due to obesity, arthritis, sleep apnea, fibromyalgia, depression, and anxiety. (AR 563). At the most recent administrative hearing, Plaintiff testified that she had weight loss surgery in 2018. (AR 666). Plaintiff testified that, since the surgery, she experiences gastrointestinal issues for which she takes Imodium and other medications. (AR 667, 672–73).

Plaintiff testified that she receives treatment for depression, anxiety, and panic attacks, which she experiences three to four times per week. (AR 668). Plaintiff also testified that she experiences pain in her arms and knees, as well as numbness in her fingers from arthritis. (AR 668). Plaintiff stated that she uses a walker and is unable to stand for more than ten to fifteen

minutes. (AR 670). Plaintiff also explained that she has difficulty holding things, buttoning her shirt, and tying her shoes due to stiffness in her fingers. (AR 671).

### C. Medical History

Plaintiff began treatment with medical professionals in 2007. Due to the voluminous nature of Plaintiff's medical history, which includes medical examinations and findings from over twenty medical providers, the Court will briefly summarize medical evidence that is most relevant for purposes of this Appeal. This recitation is not comprehensive.

1. <u>Carlos Carro Pagan, MD</u>

From January 26, 2005, until February 8, 2012, Plaintiff was under the care of Dr. Pagan, a cardiologist. (AR 372). During this time, Dr. Pagan diagnosed Plaintiff with arterial hypertension, aortic stenosis valve, persistent headache, sleep apnea, and morbid obesity, and prescribed her Benicar, Azor, Voltaren, and Calan. (AR 372).

2. <u>Lisandra Perez Colon, MD</u>

Plaintiff was treated by Dr. Colon, a pulmonologist, from March 24, 2008, until February 9, 2012. (AR 373). During this time, Dr. Colon diagnosed Plaintiff with bronchial asthma, allergic rhinitis, and gastroesophageal reflux disease ("GERD"). (AR 373). Plaintiff was prescribed Advair, Proventil, Singulair, and Omeprazole. (AR 373). On February 9, 2012, Dr. Colon found that Plaintiff was "well controlled and stable from a pulmonary point of view." (AR 373).

3. <u>Kenneth Klausman, MD</u>

On August 27, 2012, Dr. Klausman, an occupational medicine specialist, examined Plaintiff at the request of the State of New Jersey's Division of Disability Determination Services ("DDS"). (AR 403). Dr. Klausman conducted a physical examination and observed that Plaintiff walked with a waddling gait and was unable to heel-toe walk. (AR 405). Plaintiff needed assistance

when going from sitting to laying during the examination. (AR 405). Her heart rate and breathing were both normal. (AR 405). Based on Plaintiff's medical history and physical examination, Dr. Klausman found that Plaintiff suffered from morbid obesity, aortic stenosis, sleep apnea, low back pain, and headache. (AR 406). Dr. Klausman also ordered an x-ray of Plaintiff's left knee, which showed medial compartment osteoarthritis. (AR 424).

4. <u>Lawrence Mintzer, PhD</u>

On August 27, 2012, Dr. Mintzer, a Licensed Psychologist, conducted a complete mental status examination of Plaintiff at the request of DDS to aid in the evaluation of Plaintiff's mental status, hypertension, depression, sleep apnea, morbid obesity, and asthma. (AR 407). In addition to these conditions, Plaintiff also complained of panic attacks, anxiety, headaches, sleeplessness, and heart problems, as well as issues with concentration and memory. (AR 408).

Dr. Mintzer observed that Plaintiff "seemed somewhat depressed" and "[h]er affect was somewhat constricted." (AR 409). He diagnosed Plaintiff with depressive disorder and found that Plaintiff's limitations were moderate to severe and were caused by a combination of health and psychological problems. (AR 410).

Dr. Mintzer completed another mental status examination of Plaintiff on May 21, 2013, at the request of DDS. (AR 419). Plaintiff reported having suicidal thoughts six months earlier and also reported auditory hallucinations. (AR 421). Dr. Mintzer observed that Plaintiff seemed "somewhat anxious and a bit depressed." (AR 421). He diagnosed Plaintiff with depressive disorder and panic disorder with mild agoraphobia. (AR 422).

5. <u>Samuel Wilchfort, MD</u>

Dr. Wilchfort examined Plaintiff on April 5, 2013. (AR 413). Plaintiff's chief complaints were knee and low back pain. (AR 413). Dr. Wilchfort diagnosed Plaintiff with morbid obesity,

5

opining that it made breathing difficult for Plaintiff and was the cause of her knee pain. (AR 414). Plaintiff was also diagnosed with bilateral knee pain with decreased range of motion, chronic low back pain with decreased range of motion, and "some depression." (AR 414).

6. <u>Ramya Lotano, MD</u>

Dr. Lotano, a pulmonologist, examined Plaintiff on January 4, 2013. (AR 434). Plaintiff complained of being short of breath, having chest tightness, wheezing, and coughing, as well as nasal congestion. (AR 434). Plaintiff was diagnosed with moderate asthma, probable obstructive sleep apnea, allergic rhinitis, uncontrolled GERD, and morbid obesity. (AR 435). Dr. Lotano suggested that Plaintiff increase her Advair dosage and to add Spiriva, Flonase, and Sudafed to her medications. (AR 435). Dr. Lotano also ordered a pulmonary function test, a chest X-ray, and a sleep study. (AR 435).

7. <u>Kathleen Heintz, DO</u>

Dr. Heintz, a cardiologist, first examined Plaintiff on December 21, 2012. (AR 440). Plaintiff complained of chest pain and getting winded when ambulating for short distances. (AR 440). Plaintiff was observed to be morbidly obese and chronically ill. (AR 442). Dr. Heintz diagnosed Plaintiff with chest pain, benign hypertension, depression, morbid obesity, and degenerative joint disease, and ordered an electrocardiogram ("EKG") and a stress test, though she noted that Plaintiff was unable to walk on a treadmill. (AR 443).

Plaintiff was examined by Dr. Heintz again on April 24, 2013. (AR 436). Plaintiff's stress test and EKG were unremarkable. (AR 436). Dr. Heintz started Plaintiff on Diovan. (AR 436). Plaintiff was observed to be chronically ill, morbidly obese and "not doing that well." (AR 437–38). Dr. Heintz diagnosed Plaintiff with benign hypertension, morbid obesity, and chest pain. (AR

437). Dr. Heintz discussed the importance of weight loss with Plaintiff, who indicated an interest in having bariatric surgery. (AR 438).

Dr. Heintz again examined Plaintiff on June 21, 2013, at which time Plaintiff continued to complain of chest pain. (AR 1463). Plaintiff was referred to a specialist for bariatric surgery. (AR 1464). Dr. Heintz performed a cardiology follow-up for pre-operative clearance on January 14, 2015. (AR 1470).

On August 19, 2015, Plaintiff was examined by Dr. Heintz for complaints related to hypertension. (AR 1479). Dr. Heintz ordered a stress test and blood work, and counseled Plaintiff on exercise and diet for weight loss management. (AR 1483). Plaintiff was diagnosed with chest pain, benign hypertension, morbid obesity, shortness of breath, left arm pain, and an abnormal EKG. (AR 1484).

On October 21, 2015, Plaintiff returned for an examination with Dr. Heintz before her bariatric surgery. (AR 1491, 1495). Plaintiff was found to have good exercise tolerance and minimal risk factors and, as such, Dr. Heintz approved Plaintiff for surgery. (AR 1498–99).

8. <u>Patrick M Cronin, DO</u>

Plaintiff was under the treatment of rheumatologist Dr. Cronin from July 16, 2014, to September 7, 2018. (AR 549, 1302, 1379, 1819). Plaintiff was diagnosed with polyarthralgia, polymyalgia, osteoarthritis, fibromyalgia, paresthesia, and morbid obesity. (AR 543, 1381, 1547).

9. <u>Yekaterina Koshkareva, MD</u>

Dr. Koshkareva, an otolaryngologist, first examined Plaintiff on April 27, 2016. (AR 1317). Plaintiff complained of trouble swallowing and was diagnosed with dysphagia, adenoid hypertrophy, and obstructive sleep apnea. (AR 1317, 1320). Plaintiff returned on May 25, 2016, and was additionally diagnosed with hernia, globus sensation, and thornwald cyst. (AR 1316).

10. <u>Melvin Pratter, MD</u>

In preparation for bariatric surgery, Dr. Pratter interpreted a pulmonary function test that Plaintiff took on December 22, 2014, which showed moderate airflow obstruction. (AR 1738–39). Based on the results of the test, Plaintiff was diagnosed with dyspnea and respiratory abnormality. (AR 1738).

11. <u>Brendan Garrett O'Connell, MD</u>

Plaintiff was examined by Dr. O'Connell three times between November 2015 and November 2017 to seek pre-operative bariatric surgery care. (AR 1752–88). Plaintiff was considered morbidly obese and was diagnosed with excessive energy intake with comorbidities of hypertension, asthma, obstructive sleep apnea, depression, polyarthritis, and ventral hernia. (AR 1758, 1784).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). By contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.*; *see also Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*, 710 F.2d at 114). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and

9

explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III.   ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 29, 2012, the alleged disability onset date, and thus met the insured status requirements of the Social Security Act through March 31, 2018. (AR 562).

At step two, the ALJ found that Plaintiff suffered from several severe medically determinable impairments: osteoarthritis-bilateral knees, asthma, obstructive sleep apnea, carpal tunnel syndrome, fibromyalgia syndrome, obesity status post-bariatric surgery, mood disorder, and anxiety disorder. (AR 562–63). The ALJ considered these impairments to significantly limit Plaintiff's ability to perform basic work activities. (AR 565). As for Plaintiff's hypertension, arterial hypertension, aortic stenosis valve, headache, GERD, hip and ankle degenerative changes, and reduced visual acuity, the ALJ found that these conditions did not constitute severe impairments. (AR 565–66).

At step three, the ALJ found that none of Plaintiff's medically determinable impairments or combination of impairments met or medically equaled the severity of any listing. (AR 567–74).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. (AR 574). At step four, the ALJ found that Plaintiff did not possess the RFC to perform her past relevant work as a child welfare case worker because the exertional level required for that position exceeds that of Plaintiff's RFC. (AR 592).

At step five, the ALJ, relying on the testimony of the VE, found that there are a significant number of jobs in the national economy of which Plaintiff is capable of performing. (AR 593). Specifically, the VE testified that there are approximately 16,000 jobs as a document preparer, approximately 7,000 jobs as a parimutuel ticket checker, and approximately 2,000 jobs as a

telephone quotation clerk in the national economy that could be performed by an individual with Plaintiff's vocational profile. (AR 593–94). This testimony was determined by the ALJ to be consistent with the information contained in the Dictionary of Occupational Titles and Plaintiff's RFC. (AR 593–94). The ALJ therefore concluded that Plaintiff has not been disabled within the meaning of the Social Security Act from February 29, 2012, her alleged disability onset date, through the date of the decision. (AR 594).

## IV.     DISCUSSION

In her appeal, Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. (Pla. Br., ECF No. 6 at 15, 25). The Court agrees, but for reasons different from those asserted by Plaintiff, who argues that the ALJ's analysis at steps four and five was not supported by substantial evidence.

An appeal from a denial of Social Security and Disability benefits is quite unlike ordinary litigation. As explained by the Supreme Court, "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000); *see also* 20 C.F.R. § 404.900(b) (providing that the SSA "conduct[s] the administrative review process in an informal, non-adversarial manner."). District courts regularly interpret *Sims* to allow for *sua sponte* review of issues not raised by the parties in the SSA context. *See e.g.*, *Mercedes R. N. v. Kijakazi*, No. 20-16668, 2023 WL 4993672, at *5 (D.N.J. Aug. 4, 2023) (remanding a denial of disability benefits "for reasons different from those raised by Plaintiff."); *Peterson v. Comm'r of Soc. Sec.*, No. 16-2912, 2018 WL 953345, at *1 n.1 (D.N.J. Feb. 20, 2018) (explaining that "the court has the power to consider issues *sua sponte* in social security appeals."); *Taylor-Tillotson v. Colvin*, No. 13-80907, 2014 WL 7211888, at *13 (S.D. Fla. Dec. 18, 2014) (same; collecting cases); *Jennings ex rel. Thomas v. Saul*, No. 20-1953, 2021 WL 601097, at *2–3 (E.D. Pa. Feb. 16, 2021) (remanding

a denial of benefits on error considered *sua sponte* and relying on *Hess*, 497 F.2d at 840, "for the proposition that a district court has the authority in Social Security disability cases to notice errors not raised by the parties."); *Denise L.T. v. Soc. Sec. Comm'r*, No. 21-0902, 2022 WL 4591784, at *3 n.3 (N.D. Cal. Sept. 29, 2022) (in remanding based on a step two error despite the fact that no such error was raised, finding that "the failure by Plaintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it," and explaining that "the court can, and should, raise and address [such] issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence – and to take any consequentially necessary actions.") (relying on *Sims*, 530 U.S. at 110); *Cortes v. Berryhill*, No. 16-1910, 2018 WL 1392903, at *2 (D. Conn. Mar. 19, 2018) (same); *Farley v. Colvin*, 231 F. Supp. 3d 335, 339 (N.D. Cal. 2017) (same); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005) (same).

Here, in its plenary review of the ALJ's legal conclusions and in reviewing the ALJ's factual findings for substantial evidence, the Court finds that this matter should again be remanded for further consideration of Plaintiff's obesity at step three.

While obesity was removed as a "listed impairment" in 2000, the Administration's regulations provide that "the functional limitations caused by the MDI [("medically determinable impairment")] of obesity, either alone or in combination with another impairment(s), may medically equal a listing." Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244, at *2 (May 20, 2019) (footnote omitted). SSRs have been promulgated to "indicate how obesity is to be considered under the listings." *Abigail L. v Kijakazi*, No. 21-2275, 2022 WL 16362468, at *9

(D.N.J. Oct. 27, 2022). The most recent guidance on obesity is SSR 19-2p.[2] *Lauren R. v. Kijakazi*, No. 20-15611, 2023 WL 3884120, at *4 (D.N.J. June 8, 2023). Under SSR 19-2p, a finding of a listing equivalent at step three is appropriate if "the functional limitations caused by the MDI of obesity, [either] alone or in combination with another impairment(s), . . . medically equal a listing." 2019 WL 2374244, at *4 (footnote omitted); *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (explaining that a finding of equivalence at step three is appropriate "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.") (internal quotations omitted).

An ALJ "must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504.[3] "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'" *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (quoting *Jones*, 364 F.3d at 505). The ALJ is required to "explain his findings at step three, including an analysis of whether and why [the plaintiff's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. "[A]bsent analysis of the

---

[2] Some opinions cited by the Court relied on prior versions of the SSRs regarding obesity. SSR 19-2p "was not amended in a way that undermines the holdings in these cases." *Fernando R. v. Comm'r of Soc. Sec.*, No. 22-4579, 2023 WL 5487420, at * 3 n.4 (D.N.J. Aug. 24, 2023).

[3] Though decided before the promulgation of SSR 19-2p, there exists no "authority that challenges the applicability of *Diaz*'s meaningful review instruction." *Abigail L.*, 2022 WL 16362468, at * 10 (collecting cases).

cumulative impact of [the plaintiff's] obesity and other impairments on her functional capabilities, [the Court is] at a loss in [its] reviewing function." *Diaz*, 577 F.3d at 504 (footnote omitted).

Here, the ALJ identified Plaintiff's obesity status post-bariatric surgery as a severe impairment at step two. (AR 562–63). However, the ALJ's step three discussion of the condition is cursory at best. Aside from an explanation of the obesity analytical backdrop provided by SSR 19-2p, the entirety of the ALJ's analysis consisted of the following:

> As to obesity status post-bariatric surgery, while not stated by any physician to be disabling, the same was considered in terms of its possible effects on the [Plaintiff's] ability to work and ability to perform activities of daily living. . . . The undersigned earlier found the [Plaintiff's] obesity to be severe, but the signs, symptoms and laboratory findings of her obesity are not of such severity as found in any listing, singly or in combination with the [Plaintiff's] other impairments.

(AR 569).

The ALJ included neither the evidence that he relied upon in making his step three decision, nor an explanation of how Plaintiff's obesity, when combined with her other impairments, fails to constitute a listing. This one paragraph of explanation, stated in wholly conclusory terms and without any citation to the record, does not meet the meaningful review envisioned by *Diaz*. *See* 577 F.3d at 504 (explaining that "a discussion of the evidence" and an "explanation of reasoning" constitute "meaningful judicial review."). This is in stark contrast to the ALJ's step three analysis and detailed citation to the record with respect to Plaintiff's other severe impairments. *See* (AR 567–68) (explaining why Plaintiff's osteoarthritis-bilateral knees and carpal tunnel syndrome meet neither listing 1.18 nor 11.14); (AR 568) (explaining that Plaintiff's asthma and obstructive sleep apnea meet neither listing 3.02 nor 3.03 "because the record fails to contain the requisite test results, or exacerbations or complications at the level of severity specified in the listings."); (AR 568–69) (explaining why Plaintiff's fibromyalgia meets neither listing 1.18 nor 14.09); (AR 569–74) (explaining why Plaintiff's mental impairments do not meet a listing).

15

The ALJ's "[c]onclusory statements that [Plaintiff's obesity] does not constitute the medical equivalent of a listed impairment are insufficient," and this failure was error. *Diaz*, 577 F.3d at 504; s*ee also Jeremy R. v. Kijakazi*, No. 21-19095, 2023 WL 2264396, at *8 (D.N.J. Feb. 28, 2023) (finding that an ALJ's cursory review of a Plaintiff's obesity was "clear error."); *Marie R. v. Kijakazi*, No. 20-6612, 2022 WL 279851, at *7 (D.N.J. Jan. 31, 2022) (collecting cases remanding for insufficient consideration of obesity); *Padilla v. Astrue*, No. 10-4968, 2011 WL 6303248, at *7 (D.N.J. Dec. 15, 2011) (finding an ALJ's step three obesity analysis "inadequate because it [wa]s conclusory and d[id] not set forth the reasons for his decision.").

An ALJ's decision must include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Therefore, the Court is unable to review the ALJ's decision on this record "because no reasons were given for his conclusion that [Plaintiff's obesity] did not meet or equal a[] . . . listing." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008); *see also Burnett*, 220 F.3d at 119 (stating that an ALJ's "conclusory" step three analysis was "beyond meaningful judicial review."); *Babice v. Comm'r of Soc. Sec.*, No. 16-6254, 2018 WL 6243045, at *7 (D.N.J. Nov. 29, 2018) (same). For this reason, the Court's reviewing function is constrained. The Court will remand for further development of the record and a step three obesity analysis that is consistent with the requirements of the Third Circuit.

The failure of the ALJ to provide a meaningful analysis of Plaintiff's obesity, again, is particularly concerning given that it was the precise reason that this case was remanded previously. Upon remand, the ALJ *must* give a full and complete analysis and explanation for its findings in this regard. "It may well be the case that the ALJ will arrive at the same decision after he properly considers the obesity of Plaintiff. At this juncture, however, the ALJ must set forth his

16

consideration of Plaintiff's obesity." *Korcz v. Comm'r of Soc. Sec.*, No. 16-1039, 2017 WL 776104, at *5 (D.N.J. Feb. 28, 2017).[4]

The Court notes that Plaintiff also argued that the ALJ's analysis was flawed at steps four and five. (Pla. Br., ECF 6 at 15, 25). Having decided to remand at step three, this Court has no obligation to reach these arguments. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 156–57 (3d Cir. 2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision."); *Babice*, 2018 WL 6243045, at *8 (same).

## **CONCLUSION**

For the foregoing reasons, the Court **VACATES** the final decision of the Acting Commissioner and **REMANDS** this case to the agency for further administrative proceedings consistent with this Opinion. An appropriate Order will follow.

    */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[4] The Court recognizes the burden upon Plaintiff in having this matter remanded yet again. While the Court has the ability to direct an award of benefits, it can only do so if (1) the administrative record is fully developed, and (2) substantial evidence on the record indicates that the Plaintiff is disabled and entitled to benefits. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008). Here, the failure of the ALJ to meaningfully address Plaintiff's obesity precludes the Court from awarding benefits as the record is not fully developed.